**Robert E. RANDOLPH**

v.

**STATE of Maryland, Jonathan E. Presnell, Jeffrey L. McFarland, Kevin Lowery, and Other Unidentified Correctional Officers.**

**No. CIV. Y–98–2397.**

United States District Court,
D. Maryland.

Nov. 18, 1999.

John A. Austin, Towson, MD, for Plaintiff.

Honorable J. Joseph Curran, Jr., Attorney General of Maryland, Gloria Wilson Shelton, Assistant Attorney General, Baltimore, MD, for Defendants State of Maryland, Officers Presnell and McFarland.

**MEMORANDUM OPINION**

JOSEPH H. YOUNG, Senior District Judge.

I.

This case is before the Court on a Motion for Summary Judgment filed by the State of Maryland, Jonathan E. Presnell, Jeffrey L. McFarland, and unidentified correctional officers [collectively "Defendants"]. The Plaintiff, Robert E. Randolph ["Randolph"], filed a complaint in this court on July 23, 1998, asserting that the Defendants violated his federal and state civil rights and acted negligently under state law by failing to protect him from an assault by Kevin Lowery ["Lowery"] at the Maryland Correctional Institution—Hagerstown ["MCI–H"] and by inadequately attending to his serious medical needs following the assault. Randolph's complaint also contained one count of state law battery against Kevin Lowery, the state prisoner who assaulted him. Randolph opposes the Defendants' Motion and has also moved for default judgment against Lowery.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine" dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817 (4th Cir. 1995). Failure to demonstrate a genuine issue for trial will result in summary judgment. *Strag v. Board of Trustees*, 55 F.3d 943, 951 (4th Cir.1995). The mere existence of a scintilla of evidence in support of Plaintiff's case is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Plaintiff's evidence, however, is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. 2505.

II. FACTUAL BACKGROUND

The claims in this case arise from Randolph's assault by Lowery at the MCI–H on July 31, 1995. At the time of the assault, Randolph and Lowery were both confined at MCI–H and were in the Antietam Housing Unit courtyard for recreation time along with 275 to 300 other inmates. The courtyard contains a ball field where a number of inmates, including Randolph, were playing softball. According to Randolph, Lowery was sitting along the foul line and began yelling threats and insults to the players on the field. The players ignored the threats, however, because they were not addressed to any particular individual. Randolph did not have any personal contact with Lowery prior to the assault and was not involved in any altercation with him.

When recreation time was over, the corrections officers told the prisoners to assemble. Randolph claims that the officers routinely collected softball bats and other equipment immediately after announcing that the yard was closing, but on this day they were "engaged in conversations among themselves" and did not collect the equipment.

At that time, Lowery struck Randolph on the head with an aluminum softball bat. Randolph was rendered unconscious and spent three days at Washington County Hospital, where he was treated for a cerebral contusion. He was later returned to MCI–H and admitted into the infirmary where he continued to receive treatment for his head injury. After the medical staff concluded that Randolph was alert and stable, he was discharged from the infirmary on August 7, 1995, and returned to his cell under administrative segregation/protective custody status.

Officers Presnell and McFarland were assigned to the courtyard at the time of the assault. They claim that they were alerted to the incident when several inmates called for a corrections officer. McFarland and Presnell responded and found Randolph lying on the ground and bleeding from his ears, nose, and mouth. They attended to him and immediately summoned a stretcher. They also spotted an aluminum softball bat on the ground approximately ten feet from Randolph. Presnell took the bat, secured it in a locker, and later delivered it to the Warden's office.

Corrections staff investigated the incident and identified Lowery as a potential suspect. He was placed on administrative segregation, soon pleaded guilty to the assault, and plea bargained a sentence of 18 months concurrent to his existing sentence. In his interview with investigators, Lowery stated that he and Randolph had exchanged heated words after Randolph "disrespected" him. As the other inmates were leaving the field, he noticed that the officers were not looking in his direction. He picked up the bat, struck Lowery, and left the yard. Lowery noted that the officers did not see him strike Randolph.

Lowery was serving a sentence for shoplifting, violation of probation, and cocaine distribution. He was cited and disciplined in 1988, 1989, and 1990 for fighting at Roxbury Correctional Institution. From July 1993 to September 1995, Lowery had only two non-assaultive infractions. One involved what the reporting officers believed to be "a real threat toward the life of another." Lowery pleaded guilty and received two days' segregation; the hearing officer noted that it was his first "adjustment," and Lowery showed honesty and remorse.

## III.  DISCUSSION

Randolph alleges that the State of Maryland, Presnell, McFarland, and prison medical staff violated his Fourth and Fourteenth Amendment rights, and seeks damages for these violations pursuant to 42 U.S.C. § 1983. Section 1983 allows a plaintiff to seek money damages from any "person" who, acting under color of law, deprives the plaintiff of his or her constitutional rights. *See* 42 U.S.C. § 1983 (1998); *Wilson v. Layne,* 526 U.S. 603, ——, 119 S.Ct. 1692, 1696, 143 L.Ed.2d 818 (1999).

### A.  *Preliminary Issues*

█  Before examining the substance of Randolph's claims, the Court must address several procedural issues. First, because Randolph was a prisoner at the time of the alleged violations, he should have asserted violations of the Eighth Amendment rather than the Fourth Amendment. The Fourth Amendment has only limited application in the prison context, *see, e.g., Hudson v. Palmer,* 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Riley v. Dorton,* 115 F.3d 1159 (4th Cir.1997), and it would not apply here because Randolph alleges no searches or seizures. For the sake of judicial efficiency, the Court will consider Randolph's allegations to be claims under the Eighth Amendment.

█  Among the defendants Randolph has named are the State of Maryland and two corrections officers in their individual and official capacities. The State cannot be liable for damages because it does not qualify as a "person" for the purposes of § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105

L.Ed.2d 45 (1989). Similarly, Presnell and McFarland are not liable in their official capacities because a § 1983 suit against an officer in his official capacity is no different from a suit against the state itself. *Id.* at 71, 109 S.Ct. 2304. State officers, however, may be held liable under § 1983 in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 22, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Therefore, Randolph's claims against the State and the officers in their official capacities will be dismissed.

The Defendants argue that Randolph's other claims should be dismissed because he failed to exhaust his administrative remedies pursuant to § 803(7)(a) of the Prison Litigation Reform Act ["PLRA"]. The PLRA does require prisoners to exhaust all administrative remedies before filing an action relating to prison conditions, *see* 42 U.S.C. § 1997e(a), but Randolph is no longer incarcerated and therefore does not qualify as a "prisoner" as defined by the PLRA. *See, e.g., Greig v. Goord*, 169 F.3d 165, 167 (2d Cir.1999).

B. *Qualified Immunity and Eighth Amendment Liability*

▮ In response to Randolph's claims, the Defendants assert qualified immunity. Government officials who perform discretionary functions are entitled to qualified immunity, which shields them from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When reviewing such claims, the Court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right. *Wilson*, 119 S.Ct. at 1697. The Court's task during this step is to identify the specific right the plaintiff asserts was violated. *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir.1999); *see Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Once the right is identified, the Court

must determine whether it was clearly established at the time of the alleged violation. *Wilson*, 119 S.Ct. at 1697. To be "clearly established," the contours of the right must have been so conclusively drawn that the unlawfulness of the challenged act would be apparent to a reasonable official. *See Anderson*, 483 U.S. at 640, 107 S.Ct. 3034; *Edwards*, 178 F.3d at 251.

▮ Randolph has alleged two types of constitutional violations, both implicating the Eighth Amendment. The first is that the Defendants failed to protect him against the attack by Lowery. The second is that, during his recovery from the assault, the Defendants failed to address his serious medical needs. The Eighth Amendment governs the treatment prisoners receive while incarcerated and the conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). It requires officials to provide humane conditions of incarceration and to guarantee the safety of prisoners by taking reasonable precautions. *Hudson*, 468 U.S. at 526–27, 104 S.Ct. 3194. Both of Randolph's claims fall within the general rubric of the Eighth Amendment, but the Court must identify the exact rights that Randolph alleges the Defendants violated.

1. ***Failure to Protect***

Randolph's first claim is that the Defendants violated his right to be free from a physical assault by another prisoner. *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir.1997), held that it was well-established in 1993 that prison officials must take reasonable measures to guarantee inmates' safety, and a component of that duty is the requirement to protect prisoners from violence at the hands of other prisoners. "Knowledge by prison officials of a sufficiently serious threat of physical harm posed by other prisoners and deliberate indifference to such a risk plainly amounted to a violation of the Eighth Amendment [in 1993]." *Id.* In 1994, the Supreme Court decided *Farmer, supra*, which made

clear that prison officials must "take reasonable measures to guarantee the safety of the inmates."

Randolph argues that, by July 1995, *Farmer* had clearly established his right to be protected from the attack. His argument, however, fails to appreciate the exact state of the law at that time. Prior to *Farmer*, the Fourth Circuit employed a "specific threat" test: to establish an Eighth Amendment violation related to an inmate-on-inmate assault, a prisoner had to demonstrate that prison officials knew the assailant presented a specific risk to that particular prisoner. *See Ruefly v. Landon*, 825 F.2d 792 (4th Cir.1987); *see also Price v. Sasser*, 65 F.3d 342 (4th Cir.1995). *Farmer*, however, did not clarify all the obligations that prison officials owe to inmates, *Solesbee v. Witkowski*, 56 F.3d 62, 1995 WL 323941, at *2 (4th Cir. 1995), nor did it clarify the standards for Eighth Amendment claims in this Circuit.[1]

The lack of clarity is partly due to the specific facts of *Farmer*, which—in contrast to the non-sexual assault involved in the present case—addressed the issue of rape in prison. The plaintiff in *Farmer* was a transsexual placed in the general prison population and subsequently raped by another inmate. *Farmer*, 511 U.S. at 829–30, 114 S.Ct. 1970. The Court concluded that a plaintiff need not allege that prison officials knew that he was "was especially likely to be assaulted by the specific prisoner who eventually committed the assault" in order to state a cause of action under the Eighth Amendment. *Id.*

at 843, 114 S.Ct. 1970. This ruling may have limited *Ruefly*'s specific threat requirement, but only in two distinct situations. The first is where prison officials fail to protect a prisoner who "belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates," for example, transsexuals. *Id.* The second situation is where a danger is so "common and uncontrolled" that all prisoners face a pervasive risk of attack.[2] *Id.* at 843–44, 114 S.Ct. 1970.

■ The Court finds that the clearly established law at the time of Randolph's attack required an assaulted prisoner to show that prison officials were deliberately indifferent to a risk of danger presented by other inmates; however, unless (a) the plaintiff had been subject to specific threats; (b) the risk of attack was pervasive at the facility; or (c) the plaintiff belonged to a class identified as vulnerable to assaults, prison officials could not have exhibited deliberate indifference in failing to protect that plaintiff.

In light of this clearly established law, Presnell and McFarland could not have reasonably known that the attack on Randolph violated his constitutional rights. Randolph alleges that the prison officials knew of Lowery's violent propensities based on his disciplinary record and general reputation. Even assuming this were true, however, Randolph would not fall within one of the three protected categories of prisoners identified above. First, he had no prior conflicts with Lowery and was not threatened by Lowery prior to

1. Although one district court in this Circuit held in March 1995 that *Farmer* vitiated *Ruefly*, *see Westmoreland v. Brown*, 883 F.Supp. 67, 75 n. 9 (E.D.Va.1995), it was by no means clear in 1995, nor is it clear today, just to what extent *Ruefly* has been abrogated. *Compare Price v. Sasser*, 65 F.3d 342, 347 (4th Cir.1995)(stating that *Farmer* established that a risk of danger particular to the individual is not required) *with Rich v. Bruce*, 129 F.3d 336, 339 (4th Cir.1997)(requiring prisoner to demonstrate that a prison guard knew that his actions exposed the prisoner "to a specific risk distinct from the general risks of violence

from other inmates ... to which [the prisoner] was always exposed").

2. *Farmer* and other Eighth Amendment jurisprudence, therefore, established "a spectrum within which a prison assault might constitute unconstitutional 'punishment.'" *Westmoreland*, 883 F.Supp. at 75. At one end of the spectrum is the most obvious case where a specific assailant presents a known risk to a particular prisoner; at the other end is the situation where a risk is so pervasive that no inmate is safe. *Id.*

July 31, 1995. Second, Randolph did not belong to a group of prisoners particularly vulnerable to assaults by Lowery or other inmates. Third, nothing in the record could persuade a reasonable trier of fact that Lowery presented a pervasive risk of assault at MCI–H. Even if Lowery shouted general threats to softball players in the recreation area or threatened other specific prisoners in the past, any risk he posed to the inmate population at MCI–H was orders of magnitude below the risks described in *Farmer. See* 511 U.S. at 844, 114 S.Ct. 1970 (describing risk of rape where "potential victims dared not sleep [but] instead ... would leave their beds and spend the night clinging to the bars nearest the guards' station"). Because Randolph's allegations fall outside of the spectrum of risks identified in *Farmer,* it was not clearly established in July of 1995—nor is it clearly established today— that he had an Eighth Amendment right to be free from the attack by Lowery. Presnell and McFarland are entitled to qualified immunity on this claim.

### 2. *Serious Medical Needs*

■■■■ Randolph also alleges that the Defendants exhibited deliberate indifference to his serious medical needs in three ways.[3] First, he claims that the prison medical staff improperly diagnosed, evaluated, and analyzed his injuries. This claim fails to state a constitutional deprivation. The parties agree that Randolph's injuries were serious, but under the two-step *Farmer* test, Randolph must prove that the medical staff acted with deliberate indifference while diagnosing, evaluating, and analyzing his injuries. *See Johnson v. Quinones,* 145 F.3d 164, 167 (4th Cir.1998). In particular, Randolph must show that the medical staff knew about the injuries he claimed and acted with reckless disregard to a serious risk of harm when making their diagnoses. *See id.* at 168. A negligent diagnosis, however, is below any

constitutional standard of liability. *See id.; Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Randolph has failed to allege any facts that could lead a reasonable trier-of-fact to conclude that the medical staff was deliberately indifferent in diagnosing or analyzing his condition. His claim, therefore, is at most a claim of negligence that is not cognizable under the Eighth Amendment. *See Johnson* 145 F.3d at 168–69.

■■■■ Randolph's second medical claim is that the prison officials paroled him three months prior to the end of his sentence to avoid additional medical expenses. However, this claim is not cognizable under the Eighth Amendment. Even if he had provided evidence to show reckless disregard in the prison's decision to parole him, Randolph has not explained how this decision violated his Eighth Amendment rights or harmed his physical well-being. Moreover, the undisputed facts show that the parole was simply a matter of procedure: Randolph had earned 95 days "diminution of confinement credits" and his maximum term was due to expire on January 24, 1996.

■■■■ The final claim regarding Randolph's medical care alleges that after his hospital stay, he required daily medical attention and made repeated requests for additional treatment, but the medical staff denied his requests, refused to evaluate his need for further treatment, and was generally indifferent to his medical condition. A prison official violates the Eighth Amendment by acting with deliberate indifference to a prisoner's serious medical needs. *Estelle,* 429 U.S. at 104, 97 S.Ct. 285. To establish this type of deprivation, the plaintiff must prove: (a) that he had a sufficiently serious medical need that required medical treatment; and (b) prison officials were aware of it, but acted with deliberate indifference by declining to secure available medical attention. *Brice v. Virginia Beach Correctional Ctr.,* 58 F.3d

---

**3.** Because Randolph provided no evidence to support his contention that Presnell and McFarland violated his Eighth Amendment rights by not giving him medical assistance soon after his assault, *see* Pf.'s Compl. at 5, the Court will dismiss this claim.

101, 104 (4th Cir.1995). Because this constitutional right was clearly established at the time of Randolph's injury, the Defendants are not entitled to qualified immunity.

Nevertheless, Randolph cannot avoid summary judgment because he has failed to provide any evidence of deliberate indifference on the part of the prison's medical staff. Randolph's medical file shows that the staff was aware of his complaints and symptoms—for example, dizziness and headaches. To prove deliberate indifference, Randolph must show that the staff declined to seek medical attention for his ailments, *id.*, or knew about his injuries and recklessly refused to treat them, *Johnson*, 145 F.3d at 168. He has done neither. Although he contends that the prison ignored his medical requests, Pf.'s Compl. at 6, the uncontested evidence shows that Randolph requested care only twice and received it both times.

Similarly, there is no evidence to show that the medical staff concluded from Randolph's symptoms that he had a more serious injury, yet failed to treat it. Indeed, Randolph has not even mentioned a serious injury that the medical staff may have misdiagnosed or mistreated. His complaint alleges that the medical staff's deliberate indifference was "the direct and proximate cause" of "additional pain, suffering, disfigurement and disability," but nowhere does he explain how the alleged mistreatment exacerbated the pain and disability resulting from the assault. Absent any evidence that the staff either ignored his complaints or failed to treat his injuries, Randolph's claims fail as a matter of law.

## III. CONCLUSION

Based on the foregoing analysis, the Court finds that Presnell and McFarland are entitled to qualified immunity from Randolph's failure-to-protect claim. In addition, Randolph failed to state a constitutional violation in connection with two of his medical care claims, and failed to meet his summary judgment burden with regard to the third. These claims, therefore, will be denied. Randolph has failed to establish a federal claim and this Court lacks jurisdiction pursuant to 28 U.S.C. § 1331 to entertain his state law claims, including his Motion for Default Judgment against Lowery.

### ORDER

In accordance with the attached Memorandum, it is this 18th day of November 1999, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion for Summary Judgment BE, and the same IS, hereby GRANTED; and

2. That Plaintiff's federal claims BE, and the same ARE, hereby DISMISSED; and

3. That judgment BE, and the same hereby IS, ENTERED in favor of Defendants; and

4. That Plaintiff's state law claims BE, and the same hereby ARE, REMANDED to Maryland District Court;

5. That copies of this Memorandum and Order be mailed to counsel for the parties.