Filed: December 4, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-7619
(CA-94-1424-AMD)

Gregory L. Rich,

Plaintiff - Appellee,

versus

Sergeant Michael Bruce,

Defendant - Appellant.

O R D E R

The Court amends its opinion filed November 13, 1997, as follows:

On page 6, second full paragraph, line 7 -- the sentence beginning "These findings establish" should begin a new paragraph.

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GREGORY L. RICH,
<u>Plaintiff-Appellee,</u>

v.

SERGEANT MICHAEL BRUCE,
<u>Defendant-Appellant,</u>

No. 96-7619

and

SEWALL SMITH, Warden; JAMES
SANDERS; JAMES PEGUESE;
LIEUTENANT GRANT; TERESA
WILSON-BOGANS, Corporal,
<u>Defendants.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-94-1424-AMD)

Argued: October 1, 1997

Decided: November 13, 1997

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

_____

Reversed by published opinion. Judge Luttig wrote the opinion, in
which Chief Judge Wilkinson and Judge Wilkins joined.

_____

**COUNSEL**

**ARGUED:** David Phelps Kennedy, Assistant Attorney General, Bal-
timore, Maryland, for Appellant. Paul R. Kramer, PAUL KRAMER,

P.A., Baltimore, Maryland, for Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland, for Appellee.

---

**OPINION**

LUTTIG, Circuit Judge:

Plaintiff-appellee Gregory L. Rich filed this § 1983 action against defendant-appellant Michael Bruce, alleging that Bruce violated Rich's rights under the Eighth Amendment. After a bench trial, the district court found for Rich and entered judgment accordingly. For the reasons that follow, we reverse.

I.

Gregory L. Rich is an inmate at the Maryland Correctional Adjustment Center. This institution, known as "SuperMax," is the most secure penal institution in Maryland, designed to house inmates with the most serious behavioral and management problems. As a super-maximum security institution, it has single cells, limited inmate movement, limited physical contact between inmates, and limited physical contact between inmates and officers. There are detailed procedures for searching and securing inmates whenever they are removed from their cells.

Because of repeated and egregious misbehavior, Rich was assigned to disciplinary segregation in what was an even more secure part of SuperMax. The inmates in disciplinary segregation are handled in accordance with stringent procedures designed to prevent inmates from coming into any contact with one another. Previous to the events giving rise to this lawsuit, there had been instances of assaults by inmates on other inmates or on prison officials; the rigorous procedures governing the facility in general, and those governing inmates in disciplinary segregation in particular, had been specifically designed, and on occasion modified, to eliminate or minimize these risks. See, e.g., J.A. at 21.

2

On July 23, 1992, Michael Bruce, at that time a Sergeant at Super-Max, was the supervising officer in charge of the area in which Rich was incarcerated. Bruce removed Rich from his cell and placed him in an outside recreation area. While Rich was secured there, Bruce released another inmate, Kenneth Higgins, from his cell for his recreation period in the "day room" in front of the cells. Higgins was a highly dangerous inmate, and the prison had issued a notice warning that Higgins should be considered an enemy of all the other inmates. S.A. at 14. Furthermore, because Rich had stabbed Higgins some months earlier, Higgins was considered to be Rich's enemy in particular. See S.A. at 6-7.

Forty-five minutes later, Bruce went to bring Rich back from outside recreation. Bruce walked with Rich, who was handcuffed in accordance with MCAC procedures, up the corridor leading from the outside recreation area to the cells, past the sergeant's office and the interview room, then toward the locked door ("door # 58") that separated the corridor from the day room. Bruce asserts that he intended to call Higgins to the door to tell him it was time to return to his cell, then secure Rich in the interview room, then lock Higgins in his cell, and finally return Rich to his cell. Apparently Bruce needed to take Rich through door # 58 to return him to his cell; accordingly, it was necessary for Bruce to return Higgins to his cell first to avoid bringing the inmates into contact with each other.

Presumably because of a misunderstanding, another prison official, who was located in the control room so that she could see both door # 58 and the day room, and who had control over the door by remote control, opened the door.[1] Higgins jumped through the door with his hand over his head, holding a shank. Despite Bruce's efforts to protect Rich, Higgins was able to stab Rich. Other prison officials came to Bruce's aid, and together they restrained Higgins and gave Rich first aid. Rich required both hospitalization and surgery, and although he ultimately recovered, he has permanent scars.

_____

[1] This officer claimed that she could not see that Higgins was in the day room. Apparently Bruce had earlier told a different official in the control room of Higgins' presence in the day room. That officer had left, and had neglected to warn the replacement official of Higgins' whereabouts.

3

Bruce, apparently frightened, filed a report of the day's events that falsely stated that he had complied with certain regulations that he had in fact broken. Later, including at trial, he admitted that this report was false. Among the regulations that Bruce violated are the following:

> (1) regulations requiring that no more than one inmate be out of his cell for recreation at any given time.

> (2) regulations requiring that two officers participate in taking an inmate out of his cell.

> (3) regulations requiring that inmates given recreation in the day room wear handcuffs.

> (4) regulations requiring that prisoners' clothes and persons be carefully searched before they leave their cells.

See generally S.A. at 2-5; 9-13. As a result of these actions, Bruce was demoted and otherwise disciplined after an internal investigation found he had acted with extreme negligence. See S.A. at 8-9.

Rich thereafter brought suit against Bruce and various other prison officials pursuant to 42 U.S.C. § 1983. Although judgment was ultimately entered in favor of all other defendants, the district court concluded, after a bench trial, that Bruce had, through his actions and omissions, exhibited deliberate indifference to a substantial risk of serious harm to Rich, and that Bruce had therefore violated Rich's Eighth Amendment rights. The court awarded Rich $40,000 in compensatory damages and more than $20,000 in attorneys' fees. See J.A. at 31, 36.

II.

This case is controlled by Farmer v. Brennan, 511 U.S. 825 (1994). There, in rejecting an objective standard for "deliberate indifference," the Supreme Court held that,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

4

confinement unless the official knows of and disregards an excessive risk to inmate health or safety; <u>the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>.

<u>Id</u>. at 837 (emphasis added). While the Court made clear that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," <u>id</u>. at 842, it made equally clear that inferences from circumstantial evidence cannot be conclusive:

> Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, <u>or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent</u>.

<u>Id</u>. at 844 (emphasis added).

In concluding that Bruce acted with deliberate indifference, the district court purported to apply <u>Farmer</u>. <u>See</u>, <u>e.g.</u>, J.A. at 18. However, the district court actually found only that Bruce had actual knowledge of facts from which a reasonable person might have drawn the inference that Bruce's actions exposed Rich to a substantial risk of serious harm, not that Bruce actually drew this inference. In fact, the district court findings affirmatively establish that Bruce did not draw this inference.

The district court found, first of all, that Bruce knew that Rich was at risk from Higgins. The nature of the findings, however, make clear

5

that the district court found only that Bruce knew, as a general matter, that Higgins was a dangerous man and an enemy of Rich:

> First and foremost, there is simply no question whatso-
> ever that Officer Bruce knew that Mr. Rich was at risk from
> Mr. Higgins. . . . Every officer assigned to that housing unit,
> . . . and Officer Bruce specifically, had actual knowledge of
> the prior stabbing by Mr. Rich of Mr. Higgins, and had
> actual knowledge that Mr. Higgins was a very bad person
> who posed a grave risk of harm to everybody in that institu-
> tion, inmates and officers alike, and that Mr. Rich required
> careful treatment and handling at all times.

J.A. at 18-19.

Second, the district court found that Bruce knew of the general risks that all the inmates posed to one another and the prison officials at SuperMax:

> [Bruce] obviously knew on July 23, 1992 that he was work-
> ing in the segregation unit of SuperMax, the most secure
> institution in the state of Maryland. . . .
>
> He had actual knowledge that the people in [the disciplin-
> ary segregation unit] on July 23, 1992 posed a grave risk of
> harm to each other and to correctional officers.

J.A. at 19.

Third, the district court found that Bruce deliberately violated "im-portant and critical" rules that were "designed specifically for the place where he was assigned, the segregation unit of SuperMax." J.A. at 20. And it found that there had been other "instances of inmates stabbing or shanking other inmates while the victims were hand-cuffed," and that the regulations that Bruce violated "were designed specifically and precisely for just this situation." J.A. at 21.

These findings establish that Bruce knew, as a general matter, that Rich was at risk from other inmates, and from Higgins in particular, and that Bruce knew that his actions were in violation of SuperMax regula-

6

tions. They do not establish, however, that Bruce had actual knowledge that his actions uniquely increased these general risks to which Rich was exposed each and every day he was incarcerated in disciplinary segregation at SuperMax. That is, the findings do not establish that Bruce knew that his actions exposed Rich to a specific risk distinct from the general risks of violence from other inmates and Higgins to which Rich was always exposed, and of which Bruce was most certainly aware.

On the contrary, the district court's findings regarding Bruce's awareness of the specific risk created by his actions sound not in subjective recklessness, but rather in negligence:

> This was Sergeant Bruce engaging in <u>active negligence and deliberate violations</u> of important and critical correctional department rules and regulations . . . .
>
>  . . .
>
>  Can then-Sergeant Bruce have been <u>so stupid, so lazy, so inattentive, so tired, so burnt out</u> to have done what he did?
>
>  Apparently he was.
>
>  . . .
>
>  In my judgment, applying the Supreme Court standard, this amounts to deliberate indifference. It is beyond the pale. For a single correctional officer to take the kinds of risks that were taken here, with actual knowledge, in the worst institution in the state and in the worst part of that institution, in direct, conscious, willful disregard of the specific regulations that were designed specifically to protect inmates and officers from the very kind of harm that has been inflicted here, that is deliberate indifference. <u>Whether you call it stupidity, laziness, or gross and extreme negligence, it's recklessly indifferent</u> to the risk that Mr. Rich was placed under. The combination of circumstances, the confluence of circumstances equals reckless indifference.

7

. . .

> [The cause of the incident] was Officer Bruce's gross indif-
> ference to the circumstances that confronted him that day.
> He was trying to do what he thought would achieve the most
> reasonable accommodation of all interests, I suppose.
> Apparently other officers had advised him, upon his arrival
> at SuperMax, that despite the regulations, there were ways
> to get around them. And he foolishly got into lock step. <u>But
> he was not smart enough to realize the risks that he was cre-
> ating for himself and for Mr. Rich.</u>

J.A. at 20, 23-24, 27 (emphases added).

Appellee Rich makes much of the fact that the district court used
the phrase "actual knowledge," both in the language quoted <u>supra</u>,
and elsewhere in the findings. <u>See</u>, <u>e.g.</u>, J.A. at 25 ("There must be
actual knowledge of the threat of the risk. It is clear here that Officer
Bruce had that."). However, the context of the findings as a whole,
as the findings quoted <u>supra</u> confirm, makes clear that Bruce had
actual knowledge only (1) that Rich was in danger from Higgins as
a general matter, (2) that SuperMax was a dangerous place, where
everyone was in danger from the inmates, and (3) that Bruce was vio-
lating regulations. It is quite clear that the district court did not find
that Bruce knew that his violations of the regulations created any
unique risk for Rich. Quite the contrary; the district court actually
concluded that Bruce was too stupid to realize this. <u>See also</u> J.A. at
29 ("There is a perfect marriage between violations of which Officer
Bruce had actual knowledge in the light of a threat to Mr. Rich by an
identified inmate of which Officer Bruce had actual knowledge and
the harm that befell Mr. Rich."); <u>id</u>. ("There is no basis for a conclu-
sion that Officer Bruce reasonably thought he was doing anything
other than engaging in conduct which created <u>a foreseeable risk</u> that
Mr. Rich's Eighth Amendment rights would be violated.") (emphasis
added); J.A. at 28-29 (Bruce's actions were unreasonable in light of
"the facts and circumstances of which he had actual knowledge."). It
is clear, then, that Bruce had actual knowledge of facts from which
a reasonable person might have inferred the existence of the substan-
tial and unique risk to Rich caused by Bruce's conduct. This, how-
ever, is not enough to establish a violation of the Eighth Amendment.

8

Farmer makes clear that the defendant official-- here, Bruce -- must actually have drawn the inference.**2** From the district court's own findings, it is plain that Bruce did not draw this inference.

Rich also argues that even if the district court failed to find that Bruce had actual knowledge that his conduct created a unique risk to Rich, such knowledge can be readily inferred. Bruce, however, steadfastly maintained that he did not at the time realize the dangers his actions created -- for himself, as well as for Rich -- and the district court specifically found that Bruce was sincere on this point:

> I might say that I was very impressed with what I perceived to be Officer Bruce's sincerity. I observed him when he testified yesterday, and he seemed genuinely to regret what happened. He really did. I thought I saw a real reaction when I asked him about the fact that he put his own life at risk by the shortcuts he took.

J.A. at 25. As this finding suggests, the idea that Bruce had actual knowledge that his violations of the prison rules uniquely exposed Rich to a substantial risk is hard, if not ultimately impossible, to square with the fact that Bruce exposed himself, as well as Rich, to substantial danger through his actions. On the contrary, the facts reveal that, as Bruce testified, Bruce honestly believed that door # 58 would stay locked, and that this barrier would be sufficient to protect Rich, as well as himself, from Higgins.

---

**2** Bruce's actual knowledge that Rich was in danger from Higgins as a general matter, absent knowledge that Bruce's actions uniquely increased this risk, is clearly insufficient to satisfy Farmer. That case explicitly equated the "deliberate indifference" standard of Eighth Amendment jurisprudence with the "subjective recklessness" standard from criminal law. 511 U.S. at 839-40. A defendant is not subjectively reckless where, although he is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk. Accordingly, this is a case in which the defendant "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844.

9

CONCLUSION

For the reasons stated, the judgment of the district court is
reversed.

REVERSED

10