**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1588**

CODY A. HEARN; CHRISTOPHER A. HEARN, individually and as
Personal Representatives of the Estate of Henry C. Hearn,

Plaintiffs – Appellants,

v.

LANCASTER COUNTY; BARRY S. FAILE, individually and in his
official capacity as the Sheriff of Lancaster County;
DEBBIE HORNE, individually and in her official capacity as
Jail Administrator; CHUCK KIRKLEY, individually and in his
official capacity as Lancaster County Deputy Sheriff;
DONOVAN SMALL, individually and in his official capacity as
Lancaster County Deputy Sheriff; MITZI SNIPES, individually
and in her official capacity as Lancaster County Deputy
Sheriff; JAMES WHITAKER, individually and in his official
capacity as Lancaster County Deputy Sheriff; JOHN DOE 1,
individually and in his official capacity as Lancaster
County Deputy Sheriff; OFFICER JOHN DOE 2, individually and
in his official capacity as Lancaster County Deputy
Sheriff; JOHN DOE 3, individually and in his official
capacity as Lancaster County Deputy Sheriff; JOHN DOE 4,
individually and in his official capacity as Lancaster
County Deputy Sheriff; JOHN DOE 5, individually and in his
official capacity as Lancaster County Deputy Sheriff; JOHN
DOE 6, individually and in his official capacity as
Lancaster County Deputy Sheriff; JOHN DOE 7, individually
and in his official capacity as Lancaster County Correction
Officer; JOHN DOE 8, individually and in his official
capacity as Lancaster County Correction Officer; JOHN DOE
9, individually and in his official capacity as Lancaster
County Correction Officer; JOHN DOE 10, individually and in
his official capacity as Lancaster County Correction
Officer; JOHN DOE 11, individually and in his official
capacity as Lancaster County Correction Officer; JOHN DOE

12, individually and in his official capacity as Lancaster County Correction Officer,

Defendants – Appellees.

———————

Appeal from the United States District Court for the District of South Carolina, at Beaufort. Richard M. Gergel, District Judge. (9:11-cv-01074-RMG)

———————

Argued: January 30, 2014                    Decided: April 15, 2014

———————

Before TRAXLER, Chief Judge, DIAZ, Circuit Judge, and Liam O'GRADY, United States District Judge for the Eastern District of Virginia, sitting by designation.

———————

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Chief Judge Traxler and Judge O'Grady joined.

———————

**ARGUED:** William Angus McKinnon, MCGOWAN, HOOD & FELDER, LLC, Rock Hill, South Carolina, for Appellants. Andrew Lindemann, DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:** Brent P. Stewart, STEWART LAW OFFICES, LLC, Rock Hill, South Carolina, for Appellants. James M. Davis, Jr., DAVIDSON & LINDEMANN, P.A., Columbia, South Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

The personal representatives of Henry Hearn's estate sued several officers of the Lancaster County Sheriff's Office under 42 U.S.C. § 1983, alleging that the officers acted with deliberate indifference to a substantial risk that Hearn would commit suicide while detained in the Lancaster County Detention Center. The district court granted the defendants' motion for summary judgment, primarily because the plaintiffs could not establish that any defendant was subjectively aware of Hearn's suicidal tendencies at the time of his arrest or detention. For the reasons that follow, we affirm.

I.

In reviewing an order granting summary judgment, we view the facts in the light most favorable to the plaintiffs. Bland v. Roberts, 730 F.3d 368, 372 (4th Cir. 2013).

A.

On September 13, 2009, Henry Hearn's ex-wife, Darcie Hearn, called the Lancaster County Sheriff's Office to report concerns about Hearn's behavior. Darcie Hearn explained that Hearn was living in the woods behind her home, and that she thought he was entering her home to take things when she was not present. Deputy Sheriff Donovan Small responded to the call. When he arrived at Darcie Hearn's home, she directed him to the area of

3

the woods where she believed Hearn had been living. In the woods, Small found a campsite, which largely consisted of a few sheets on the ground.

Sergeant James Whitaker arrived at the scene shortly thereafter to assist Small. Although Small and Whitaker did not find Hearn at the campsite, they did find a yellow notepad on the top of the sheets, the first five pages of which consisted of a handwritten note, which was composed by Hearn and addressed to Darcie Hearn. Although the parties debate how thoroughly Small and Whitaker reviewed the note, we will assume for summary judgment purposes that they both read it.

After reviewing the note, Small and Whitaker left Hearn's campsite. Small returned alone after Darcie Hearn placed another call to the Sheriff's Office. This time Hearn was present at the site. Small called his supervisor, Lieutenant Chuck Kirkley, about the situation and arrested Hearn on a charge of criminal domestic violence.

Small and Hearn engaged in casual conversation while he transported Hearn to the detention center. Among other things, Small asked Hearn what he did for a living. Hearn said that he normally worked on oil rigs in Florida but explained that the work had slowed down recently. Small asked Hearn if he had any medical problems, to which Hearn answered "'No, I'm fine.'" J.A. 113. Small also questioned Hearn about the meaning of the

4

note. Hearn reportedly "said it meant that . . . he was leaving; he was going out west, and he was telling his [] wife and [others] goodbye." Id. At some point during the conversation, Hearn asked Small to retrieve some property that he had buried in the woods at a different campsite, which Small agreed to do after he dropped Hearn off.

When they arrived at the detention center, at approximately 3:20 p.m., Small turned Hearn over to Sergeant Mitzi Snipes for booking. He also gave Snipes the notepad. Without reading it, she "flipped through the notebook" to look for contraband. J.A. 161. At no point did Small mention to Snipes that he had any concerns about Hearn's mental or physical wellbeing.

As booking officer, Snipes was responsible for collecting Hearn's personal information, such as his name, address, and contact information. Hearn declined to provide an emergency contact. Snipes also conducted a standard medical screening of Hearn, which required her to ask, among other things, whether Hearn was having any suicidal thoughts. Hearn responded "'No'" to that question. J.A. 160. Snipes described Hearn's demeanor throughout the booking process as "calm" and "cooperative." J.A. 158.

While Snipes was booking Hearn, Small consulted Kirkley about what to do with the notepad, as Small thought it might have been evidence. After reviewing the note, Kirkley told

5

Small that it was personal property and instructed him to put it with Hearn's other belongings. After doing so, Small drove back out to retrieve Hearn's other property.

At approximately 6:15 p.m., just three hours after he arrived at the detention center, Hearn hanged himself in his jail cell.

B.

Hearn's sons, Cody and Christopher Hearn, individually and as representatives of his estate, filed suit against Small, Kirkley, Snipes, and Whitaker, among others,[1] in the Lancaster County Court of Common Pleas. In addition to state-law claims alleging gross negligence against Sheriff Faile and Lancaster County, the complaint alleged that the defendants acted with deliberate indifference to a substantial risk that Hearn would commit suicide while detained in the Lancaster County Detention Center, in violation of his 14th Amendment right to due process. The defendants removed the action to federal court and moved for summary judgment, arguing that they were not deliberately

---

[1] The complaint also named as defendants Lancaster County; Barry Faile, the County Sheriff; Debbie Horne, the administrator of the detention center; and unnamed employees of the Sheriff's Department. Hearn's representatives are not challenging the grant of summary judgment as to those defendants. The complaint also brought claims against the defendants in their official capacities, but the plaintiffs are now only pursuing their individual-capacity claims.

indifferent because no officer knew that Hearn was having suicidal thoughts on September 13. Alternatively, the defendants argued that they were entitled to qualified immunity.

Without reaching the latter question, the district court granted the defendants' motion. It concluded that the plaintiffs failed to raise a triable issue of fact with respect to an essential element of a deliberate-indifference claim: namely, that any defendant had subjective knowledge that there was a substantial risk that Hearn would commit suicide while detained. The court determined that Hearn's note was insufficient to support an inference that the officers actually knew that Hearn was suicidal because it lacked an explicit suicide threat. It also emphasized that one of the plaintiffs' experts testified that the meaning of the note was ambiguous. To the extent that any officer perceived any red flags with respect to Hearn's condition, the court concluded that the defendants' conduct was, at most, negligent.

Having dismissed the plaintiffs' federal claims under 42 U.S.C. § 1983, the court remanded the state-law claims. This appeal followed.

## II.

We review de novo the district court's decision to grant the defendants' motion for summary judgment. Bland, 730 F.3d at

7

373.  "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Id. (quoting Fed. R. Civ. P. 56(a)).

                                    A.

A government official violates the constitutional rights of a pretrial detainee when he knows of but disregards a serious risk of harm to the detainee.  See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  We consider here whether the plaintiffs have raised a genuine issue of fact as to whether any of the individual defendants were deliberately indifferent to a serious risk that Hearn would commit suicide while detained in the Lancaster County Detention Center.

"Deliberate indifference is a very high standard" that is generally only satisfied by government conduct that shocks the conscience.  Parrish, 372 F.3d at 302 (internal quotation marks omitted).  The plaintiffs must make a two-part showing to satisfy the standard's high burden.  Id. at 303.  First, they must establish that the defendant had a "sufficiently culpable state of mind."  Farmer, 511 U.S. at 834 (internal quotation marks omitted).  Specifically, the plaintiffs must demonstrate "that the official in question subjectively recognized a substantial risk of harm" to the detainee.  Parrish, 372 F.3d at

8

303.  In a prison suicide case, this means that the evidence must show that the defendant actually knew of the detainee's suicidal intent, not merely that he should have recognized it.

Second, even if the plaintiffs can satisfy their burden with respect to an official's subjective awareness, the evidence must also show "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"  Id. (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).  Again, "it is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient."  Id.

Whether a prison official had the requisite knowledge for either prong "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  Farmer, 511 U.S. at 842.  Although "it is not enough that a reasonable officer would have found the risk to be obvious," a factfinder may conclude that an officer "'knew of a substantial risk from the very fact that the risk was obvious.'"  Parrish, 372 F.3d at 303 (quoting Farmer, 511 U.S. at 842).  For example, the risk of injury might have been "so obvious that the factfinder could conclude that the [officer] did know of it because he could not have failed to know of it."  Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995).

9

Additionally, an official cannot escape liability under this standard if it is shown "that he merely refused to verify underlying facts that he strongly suspected to be true, which, if verified, would have compelled him to realize that the claimant needed immediate medical attention, or that he declined to confirm inferences of risk that he strongly suspected to exist." Id. (internal quotation marks omitted).

B.

We turn to examine whether summary judgment was appropriate as to each of the defendants.

1.

Viewing the record in the light most favorable to the plaintiffs, the evidence does not raise a triable issue of fact that Deputy Small subjectively knew that there was a serious risk that Hearn would commit suicide.

The plaintiffs argue that Small was subjectively aware of Hearn's suicidal tendencies because he read Hearn's note. They contend that the note so obviously signaled Hearn's suicidal ideation that Small could not have failed to recognize that Hearn was suicidal.

Like the district court, however, we do not believe the note is so clear. The note is a five-page stream of consciousness that touches on a variety of subjects. Much of it details Hearn's regret over being unable to repair his

10

relationship with his ex-wife. Although the note certainly reflects Hearn's disappointment over his situation, it lacks an explicit statement that Hearn was thinking about harming himself.

With the benefit of hindsight, some of the language can certainly be construed as macabre. For example, the note opens with the statement that "I just simply can't take the hurt no more." J.A. 219. Later, Hearn reflects on wishing he had been "the kind of man and father" Darcie Hearn wanted him to be, and states, "I only have 2 options[,] us--or this." Id. The second page of the note contains a map of a location in the woods where Hearn buried, among other things, $225 in cash, his clothes, and a book with an Elvis autograph, and it directs Darcie Hearn to retrieve the items. Near the end of the note, Hearn states: "By the way, I don't want my face sunk in." J.A. 221. It then lists four songs that Hearn liked.[2]

Notwithstanding the above, we emphasize, as did the district court, that the note lacks an explicit suicide threat. Given that, we cannot say that the note is sufficient to raise a triable issue of fact that a police officer in Small's position-

---

[2] The songs listed are: (1) "I can only imagin" [sic], for which Hearn did not provide an artist; (2) "The Dance," by Garth Brooks; (3) "It Goes," by Josh Turner; and (4) "Lay Me to Sleep," by AFI. See J.A. 221-22.

-without any other knowledge of Hearn's psychological condition--knew that Hearn was suicidal.  Cf. Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir. 1992) ("In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation . . . that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference." (quoting Edwards v. Gilbert, 867 F.2d 1271, 1275 (11th Cir. 1989))).  We are especially reluctant to hold as much given that one of the plaintiffs' experts admitted that the meaning of the note is "open to interpretation."  J.A. 207.

Although Small testified that he did not interpret the letter as a suicide note, the plaintiffs argue that his subsequent actions belie that claim.  They point to the fact that Small initiated a discussion with Hearn about the meaning of the note, and contend that his questioning suggests that he was, in fact, concerned about its contents.

But even if we accept the plaintiffs' view that Small's questioning suggested that he was concerned about the implications of the note, that is a far cry from establishing that Small knew Hearn was suicidal.  Moreover, we think Hearn's responses to Small's questions negate an inference that Small must have known that Hearn was contemplating suicide.  In addition to denying any medical problems, Hearn told Small that the note was simply a goodbye letter to his ex-wife because he

12

was moving away.  As part of the same discussion, Hearn asked

Small to retrieve his property "'so [he would] have it.'"  J.A.

119.  This interaction hardly signaled to Small that Hearn had

imminent plans to end his life.  See Brown v. Harris, 240 F.3d

383, 390 (4th Cir. 2001) (evaluating the "substantiality of the

risk" an officer perceived in light of "everything that he was

told and observed").[3]

To the extent that Small appreciated any red flags from the

note or otherwise, we think Small's questioning of Hearn defeats

the plaintiffs' claim that he was deliberately indifferent to

Hearn's medical needs.  See Parrish, 372 F.3d at 303 ("[T]o the

extent the officers recognized any risk at all, we are concerned

with the risk as they perceived it, not as a reasonable officer

under the circumstances should have perceived it . . . .").  If

Small recognized any warning signs from Hearn or the note, he

did not ignore them.  Rather, he specifically asked Hearn about

---

[3]  The plaintiffs argue that summary judgment is inappropriate because there are credibility issues with respect to Small's testimony that he did not read the note but only skimmed it.  The plaintiffs are correct, of course, that credibility determinations are not appropriate in a summary judgment proceeding, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), but the district court did not make such determinations.  Rather, it concluded that the note was not sufficient to support an inference that Small subjectively knew Hearn was suicidal even if he did read it.  The plaintiffs' other credibility argument is equally unavailing.  The mere fact that Small questioned Hearn does not raise a credibility issue about his testimony writ large.

13

his health and the meaning of the note. Hearn's responses seemed to dispel any concern. Perhaps Small's reliance on Hearn's representations was negligent, but it was not constitutionally unreasonable.

In sum, the plaintiffs have failed to forecast sufficient evidence to support the inference that Small knew Hearn was suicidal. To the extent that the evidence suggests that Small perceived any risk to Hearn's wellbeing, Small's response did not amount to deliberate indifference. Accordingly, judgment for Small was appropriate as a matter of law.

2.

The plaintiffs base their claim against Lieutenant Kirkley on the fact that he had basically the same information as Deputy Small on September 13. Because he was Small's supervisor that day, Kirkley knew all of the information leading to Hearn's arrest, including his living situation. Kirkley also read the note. Although Kirkley, like Small, denied interpreting the letter as a suicide note, the plaintiffs say that he could not have failed to recognize that Hearn was suicidal. His subsequent inaction, they argue, therefore constituted deliberate indifference.

We do not believe Hearn's suicide risk was so obvious that Kirkley must have recognized it as such. As explained with respect to Small, the note did not clearly signal that Hearn was

14

suicidal. In fact, the note is fairly read as a letter to Hearn's ex-wife, which is how Kirkley testified to interpreting it.

Even if we accept that Kirkley could not have failed to recognize that the note raised red flags about Hearn's mental health, the plaintiffs have not offered evidence suggesting that Kirkley knew his inaction after reading the note was constitutionally unreasonable in light of the risk that he did perceive. There is simply no evidence in the record, in the form of contemporaneous statements or otherwise, that Kirkley appreciated that Hearn was in need of immediate medical attention, or that he knew his inaction during the brief window between reading the note and Hearn's death was inadequate. See Parrish, 372 F.3d at 307 (noting that this court has found deliberate indifference when the uncontroverted evidence "showed that the officials in question responded to a perceived risk with subjective awareness that their response was inappropriate"). Perhaps it was negligent for Kirkley not to do anything further, but that does not satisfy the deliberate-indifference threshold.

3.

With respect to Sergeant Whitaker, the plaintiffs argue that he was deliberately indifferent because he read Hearn's

note but then "made no response to Mr. Hearn's medical need." Appellant's Br. at 27.

As discussed above, we do not believe the note is sufficient, by itself, to establish subjective awareness of Hearn's suicidal tendencies. But there is an even bigger problem with the plaintiffs' claim against Whitaker: he was not personally involved with Hearn's arrest or detention.

"In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). Whitaker left Hearn's campsite shortly after he read the note, and he never came into contact with Hearn. Whitaker was also in no position to direct Small's conduct with respect to Hearn, since there is no evidence that he even knew Hearn was arrested on September 13. On these facts, we cannot conclude that Whitaker had any "personal knowledge" or "involvement" in the alleged deprivation of Hearn's constitutional rights. See id.

4.

We also find no error in the district court's decision to grant summary judgment to Sergeant Snipes, the officer who processed Hearn at the detention center. It is uncontested that Snipes did not read the note, and Small never told her that he

16

was concerned about Hearn's mental or physical condition. Hearn was calm and cooperative during the booking process, and when Snipes asked Hearn if he was having suicidal thoughts, Hearn said no. We hardly think this raises a triable issue of fact as to whether Snipes knew Hearn was suicidal. Cf. Gordon, 971 F.2d at 1095 (finding that prison officials could not be deliberately indifferent because no one warned them that the prisoner had made suicide threats).

The plaintiffs nonetheless contend that the observations Snipes made as she was processing Hearn--e.g., his failure to provide an emergency contact--should have alerted her to Hearn's condition. But an officer's failure to appreciate a warning sign is, at most, negligent and not sufficient to establish deliberate indifference. Cf. Ward v. Holmes, 28 F.3d 1212, 1994 WL 313624, at *5 (4th Cir. June 30, 1994) (per curiam) (unpublished) (concluding that a prison official was, at most, negligent when he failed to realize that a detainee was suicidal from the fact that the detainee was drunk, had a large scar across his wrist, and spoke of giving away his bike).

## III.

Henry Hearn's death was undeniably tragic. However, the district court correctly determined that none of the officers involved in Hearn's arrest or detention violated his

17

constitutional rights.  We therefore affirm the district court's judgment.

AFFIRMED